**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

YVETTE MANCUSO,

                              Plaintiff,

        - v -                                Civ. No. 8:06-CV-627
                                                  (RFT)

MICHAEL J. ASTRUE,[1]

                              Defendant.

**APPEARANCES:**                                  **OF COUNSEL:**

OFFICE OF MARK A. SCHNEIDER            MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, New York 12901

SOCIAL SECURITY ADMINISTRATION      MARGARET A. DONAGHY, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**MEMORANDUM DECISION and ORDER**</u>

      In this action, Plaintiff Yvette Mancuso moves, pursuant to 42 U.S.C. § 405(g), for review of

a decision by the Commissioner of Social Security denying her application for Supplemental Security

Income (SSI).[2]  Based upon the following discussion, this Court recommends that the Commissioner's

decision denying Social Security benefits be **affirmed**.

_____

     [1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.

     [2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 10, Pl.'s Br., & 12, Def.'s Br.  The parties, with the approval of the Honorable Lawrence E. Kahn, Senior United States District Judge, consented to the undersigned presiding over this matter pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. No. 14.

## I. BACKGROUND

Yvette Mancuso, born on August 15, 1969, protectively filed for SSI benefits on December 11, 2001,[3] alleging disability due to neck and back pain as well as depression. Dkt. No. 5, Admin. Transcript [hereinafter "Tr."] at pp. 107 & 134. Mancuso alleges her disability began on October 2, 1998, and eventually caused her to stop working on December 3, 2001. *Id.* at pp. 107 & 129. Mancuso accumulated sixty-four college credits, but did not earn an associates degree. *Id.* at pp. 140 & 407. She previously worked as a certified nurse assistant, housekeeper, taxi driver, waitress, and cook. *Id.* at pp. 408-10.

On March 6, 2002, Mancuso's application was initially denied. *Id.* at pp. 22-25. A hearing was then held on February 10, 2004 (Tr. at pp. 433-55), before Administrative Law Judge (ALJ) Carl E. Stephan who, on March 22, 2004, issued a decision finding Mancuso not disabled (Tr. at pp. 51-57). On November 3, 2004, the Appeals Council vacated ALJ Stephan's decision and remanded the matter back to him with explicit instructions. *Id.* at pp. 73-76. In accordance with that remand, ALJ Stephan held another hearing on October 18, 2005, wherein the testimony of a vocational expert was procured. *Id.* at pp. 403-32. Thereafter, on December 22, 2005, ALJ Stephen issued another decision finding Mancuso not disabled. *Id.* at pp. 12-21. The Appeals Council denied further review on May 10, 2006, thus rendering the ALJ's decision the final determination of the Commissioner. *Id.* at pp. 5-7. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

---

[3] There are references in the Administrative Transcript indicating that Mancuso may have also filed for Disability Insurance Benefits (DIB), as well as for a Period of Disability. *See* Dkt. No. 5, Admin. Tr. [hereinafter "Tr."] at pp. 12 (decision noting claimant filed for DIB and SSI) & 114-22 (DIB Insured Status Reports); *see also* 42 U.S.C. § 416(i) & 42 U.S.C. § 405(g). It appears that Mancuso's DIB insured status expired well before her alleged onset disability date. *Id.* at p. 114. Thus, Plaintiff's eligibility for DIB is not an issue before this Court.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

The SSI program, 42 U.S.C. § 1381, *et seq*., is a federal program providing benefits to needy aged, blind, or disabled individuals who meet the statutory income and resource limitations. 20 C.F.R. § 416.110. The SSI program was designed to replace the former federally assisted state welfare programs for the aged, blind, or disabled. *Id*. While the SSI program has special eligibility

requirements that relate to establishing need,[4] the requirements for establishing disability, found at 42 U.S.C. § 1382c, are identical to the requirements under Title II of the Social Security Act for entitlement to disability insurance benefits.  *See* 42 U.S.C. § 423(d).  Therefore, the vast case law interpreting the disability provisions under Title II may be relied upon in this case.  *See Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (noting that decisions under Titles II and XVI are cited interchangeably).

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy.  *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations.  20 C.F.R. § 416.920.  At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends.  20 C.F.R. § 416.920(b).  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *Id.* at § 416.920(c).  If the claimant suffers from a severe impairment, the

---

[4] SSI benefits may not be paid unless Plaintiff meets the income and resource requirements of 42 U.S.C. §§ 1382a, 1382b, and 1382c(a)(3)(A).

Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at § 416.920(d).  The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience.  *Berry v. Schweiker*, 675 F.2d at 467.  Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*.  If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[5] to perform his or her past relevant work despite the existence of severe impairments.  20 C.F.R. § 416.920(e).  If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four).  *Berry v. Schweiker*, 675 F.2d at 467.  If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy.  *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills.  20 C.F.R. § 416.920(f); *see also New York v. Sullivan*, 906

---

[5] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. § 416.945(a).

F.2d 910, 913 (2d Cir. 1990).

<strong>C.  The Appeals Council Remand</strong>

In remanding Mancuso's SSI application back to the ALJ, the Appeals Council noted several defects in ALJ Stephan's March 2004 decision, which were to be rectified.  First, the Appeals Council noted that in assessing the severity of Mancuso's mental impairment, the ALJ failed to use the special technique set forth at 20 C.F.R. § 416.920a in that he failed to assess her degree of functionality in the four broad areas.  Tr. at p. 71.  Second, the Appeals Council observed that the ALJ identified significant non-exertional limitations, such as the limitation of performing simple, unskilled work in a low stress setting with limited interaction with other people, but the ALJ failed to obtain vocational evidence as to the extent of erosion of the occupational base for light work as a result of such non-exertional limitations.  *Id.*  On remand, the ALJ was required to do the following:

- Obtain updated medical records concerning all of the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding existing medical evidence (20 C.F.R. 416.912-913).  The updated records shall include notes from her treating sources and medical source statements about what she can still do despite her impairments.
- Evaluate the claimant's mental impairments in accordance with the special technique described in 20 C.F.R. 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. 416.920a(c).
- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 C.F.R. 416.945 and Social Security Ruling 85-16 and 96-8p).
- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. 416.966).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and

<em>-6-</em>

information in the Dictionary of Occupational Titles (DOT) and its companion
publication, the Selected Characteristics of Occupations (Social Security Rule
00-4p).

*Id*. at p. 75.

Generally, the Plaintiff complains that ALJ Stephan's December 2005 decision falls short of

the Appeals Council's mandates.  Through a myriad of arguments, Mancuso further concludes that the

ALJ's decision is not supported by substantial evidence and he applied incorrect legal standards.  After

reviewing the Administrative Transcript we find that ALJ Stephan properly complied with the Appeals

Council's mandate and Plaintiff's argument to the contrary is unsupported.  We shall review Plaintiff's

innumerous complaints to the extent Plaintiff complains that ALJ Stephan's decision is unsupported

by substantial evidence or that he applied incorrect legal principles.

### D.  ALJ Stephan's December 2005 Decision

Mancuso, as well as a vocational expert, testified at the second ALJ hearing.  Tr. at pp. 403-32.

In addition to such testimony, the ALJ had Mancuso's medical records consisting of treatment reports

and opinions from various treating, examining, and non-examining physicians, including, 1) Progress

Notes from Bassett Heathcare Cobleskill (Tr. at pp. 171-90 & 227-31); 2) Annette Payne, Ph.D, State

Agency Examining Psychologist (Tr. at pp. 191-95); 3) Amelita Balagtas, M.D., State Agency

Examining Orthopedist (Tr. at pp. 196-98); 4) R. Thornton, State Agency Non-Examining RFC

Assessor (Tr. at pp. 200-07); 5) Richard B. Weiss, M.D., State Agency Non-Examining Mental RFC

Assessor (Tr. at pp. 208-25); 6) Progress Notes from Champlain Valley Physicians Hospital Medical

Center (Tr. at pp. 237-67 & 350-59); 7) Richard F. Liotta, Ph.D., State Agency Examining Psychologist

(Tr. at pp. 269-74); 8) Brett T. Hartman, Psy.D., State Agency Examining Psychologist (Tr. at pp. 286-

93); 9) Nader Wassef, M.D., State Agency Examining Orthopedist (Tr. at pp. 294-302); 10) Aaron

Satloff, M.D., Impartial Medical Expert, Psychiatry (Tr. at pp. 321-26 & 361-74); 11) Richard S.

Goodman, M.D., Impartial Medical Expert, Orthopedics (Tr. at pp. 327-36 & 376-402); and 12) Edward S. Leib, M.D., Treating Physician (Tr. at pp. 338-43).  Plaintiff also submitted interrogatories to the Drs. Goodman and Satloff, the Impartial Medical Experts.  *Id.* a pp. 345-49.  The issue before ALJ Stephan was whether Plaintiff was disabled from December 11, 2001, her protective SSI application date, through December 22, 2005, the date of the ALJ's decision.

Using the five-step disability evaluation, ALJ Stephan found that 1) Mancuso had not engaged in any substantial gainful activity since December 3, 2001, the alleged onset disability date; 2) she has severe medically determinable impairments, namely drug abuse, depression, neck pain, and back pain; 3) her severe impairments did not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she retains the residual functional capacity to perform a significant range of light work, except that she was limited by the following: a) occasional problems understanding, remembering, and carrying out detailed instructions; and b) occasional problems dealing with stress, maintaining attention/concentration, and interacting with others.  Noting Plaintiff had no past relevant work, the ALJ continued with the disability evaluation; and 5) relying upon the vocational expert's testimony and using the Medical Vocational Guidelines as a framework, ALJ Stephan concluded there was work available in the national and local economies which Plaintiff could perform including a mail clerk, office manager, and order clerk.  *Id.* at pp. 12-21.

After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

**1.  Step Three – The Listings**

Plaintiff's arguments in her Legal Brief are rather disjointed, however, after a careful review, it appears that she does not challenge the ALJ's determinations at Steps One and Two,[6] thus, we begin our review addressing Plaintiff's complaints regarding the ALJ's Step Three determination.

Mancuso claims the ALJ erred at Step Three when he failed to find that her severe mental and physical impairments met or medically equaled Listings 1.05 (disorders of the spine), 12.04 (affective disorders), and 12.06 (anxiety related disorders).

At Step Three of the sequential disability evaluation, the ALJ must determine whether the claimant's conditions meet or medically equal the requirements for any impairment listed in Part 404 of the Social Security Regulations, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925(a).  If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience.  20 C.F.R. § 416.920(a)(4)(iii).

The burden is on the plaintiff to present medical findings which show that his or her impairments match a listing or are equal in severity to a listed impairment.  *Zwick v. Apfel*, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998).  In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria.  *Sullivan v.*

---

[6] At some point in her Brief, Plaintiff argues that the ALJ erred in not finding her disabled by reason of her obesity and fibromyalgia, issues we address later in this opinion.  We are not sure whether Plaintiff intended to challenge the ALJ's Step Two determination for failure to classify these impairments as severe.  Because her Brief lacks any argument or medical proof, we decline to address the ALJ's Step Two determination.  As set forth in General Order 18, it is Plaintiff's burden to set forth her arguments before the Court in a clear, cogent manner to ensure proper review.

*Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d).  If a claimant's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify.  *Sullivan v. Zebley*, 493 U.S. at 530.  To make this showing, the claimant must present medical findings equal in severity to all requirements which are supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b).  Any abnormal physical findings "must be shown to persist on repeated examinations despite therapy."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B).  Furthermore, the medical reports should reflect physical limitations based upon actual observations and not just the claimant's subjective complaints.  *Id.*

### a.  Back Impairment – Listing 1.05

Plaintiff began experiencing pain in her back in 1991 after she lifted her then-two year-old son out of his car seat.  Tr. at p. 411.  Since that date, x-rays and magnetic resonance imaging (MRI) reports, both spanning 1997 through 2004, consistently showed Plaintiff suffers from degenerative disc disease of the lumbar spine with small disc herniation centrally at L4-5 and L5-S1 and mild disc bulging at L4-5.  *Id*. at pp. 199, 236, 238, 251, 257, & 263-64.

Plaintiff asserts that her back impairment meets the requirements for Listing 1.05, however, as pointed out by the Commissioner, that particular Listing deals with amputation while the vertebrogenic Listing referred to by Plaintiff was repealed in 2001 and replaced by Listing 1.04.  *See* 66 Fed. Reg. 58,010, 58,017, and 58,018 (Nov. 19, 2001); 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04 (2002).   The effective date of the rule change is February 19, 2002, however, the Explanation of the Effective Date makes clear that these changes are applied to claims for benefits pending at any stage in the administrative review process.  66 Fed. Reg. 58,010 & 58,011.  Furthermore, for claims pending judicial review, such as in our case, the court's review of the Commissioner's final decision is to be

made in accordance with the rules in effect at the time of the Commissioner's final decision. *Id*. At the time the ALJ issued his second decision, Listing 1.05 was repealed and replaced with Listing 1.04. Thus, the Court will construe Plaintiff's argument as raising a claim under Listing 1.04, Disorders of the Spine.

To meet Listing 1.04, Plaintiff must show evidence of a "disorder of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in a compromise of a nerve root . . . or the spinal cord [w]ith:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04(A).

The Court adopts the Commissioner's analysis on this point and agrees that the objective medical evidence supports the finding that Plaintiff does not meet the criteria of Listing 1.04(A). First, there is no evidence that Plaintiff's back impairment caused a compromise of the nerve root and, in fact, MRIs of the lumbar spine consistently showed no nerve root involvement. Tr. at pp. 236, 238, 251, & 263. Also, upon examination, Plaintiff has had normal reflexes and sensation in her lower extremities and her muscle strength has been full. *Id*. at pp. 197, 249, & 341. Accordingly, Plaintiff fails to meet her burden of establishing that her back impairment met a Listed impairment.

### b. Mental Impairment – Listings 12.04 and 12.06

Mancuso has been treated for depression in the past; though she has not regularly sought mental health therapy, she has been prescribed varying medications to treat her depression. Plaintiff asserts that her mental impairments meets the criteria for both Listings 12.04 and 12.06. In accordance with the Appeals Council Remand, the ALJ applied the special technique for evaluating mental impairments,

as set forth in 20 C.F.R. § 416.920a.  In assessing whether Plaintiff met one of these Listings, the ALJ considered the following evidence: 1) February 2002 Report of Annette Payne, Ph.D., State Agency Examining Psychologist; 2) March 2002 Report of Richard B. Weiss, M.D., State Agency, Non-Examining Review Physician; 3) December 2004 Report of Richard F. Liotta, Ph.D., State Agency Examining Psychologist; 4) March 2005 Report of Brett T. Hartman, Psy.D., State Agency Examining Psychologist; and 5) April 2005 Report of Aaron Satloff, M.D., Impartial Medical Expert in Psychiatry. The ALJ noted that all of these opinions are well-supported by objective clinical and laboratory findings and are generally consistent.  To the extent there are differences amongst the opinions, the ALJ afforded the greatest weight to mental health professionals who actually examined Mancuso, such as Drs. Payne, Liotta, and Hartman.  Also, to the extent there are differences amongst those three opinions, the ALJ gave significant weight to each opinion for that relevant time period.  The expert opinion of Dr. Satloff, which was subjected to Plaintiff's cross-examination, was obtained to resolve inconsistencies and his opinion was given significant weight.  Tr. at pp. 14-16.

With regard to Listing 12.04 for affective disorders, an individual meets or equals this Listing if subsections A and B, or A and C are met:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
> > 1. Depressive syndrome characterized by at least four of the following:
> > > a. Anhedonia or pervasive loss of interest in almost all activities; or
> > > b. Appetite disturbance with change in weight; or
> > > c. Sleep disturbance; or
> > > d. Psychomotor agitation or retardation; or
> > > e. Decreased energy; or
> > > f. Feelings of guilt or worthlessness; or
> > > g. Difficulty concentrating or thinking; or
> > > h. Thoughts of suicide; or
> > > i. Hallucinations, delusions or paranoid thinking; or
> > 2. Manic syndrome characterized by at least three of the following:
> > > a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

With regard to Listing 12.06, anxiety related disorders, an individual meets or equals this Listing if a she can prove that her disability meets the requirements of subsections A and B, or subsections A and C, which are the following:

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or

b. Autonomic hyperactivity; or

c. Apprehensive expectation; or

d. Vigilance and scanning; or

*-13-*

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Or

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06.

In Mancuso's case, the ALJ determined that her depression and anxiety disorders satisfied the A criteria for both 12.04 and 12.06, however, she failed to satisfy the B and C criteria and therefore failed to meet her burden in showing that she met or medically equaled a Listed impairment. Specifically, the ALJ found that Mancuso had less than marked limitations of social functioning, less than marked restrictions of her activities of daily living, moderate but not marked or extreme limitations in maintaining concentration persistence and pace, and no episodes of deterioration or decompensation of extended duration.  Tr. at p. 16.  Mancuso asserts, however, that she has marked restriction of activities of daily living; marked difficulties in maintaining social functioning; deficiencies of concentration, persistence, or pace; and repeated episodes of deterioration or decompensation in work or work-like settings.  Pl.'s Br. a p. 16.  To support her argument, Mancuso generally directs the Court to the psychological evaluation completed by Dr. Liotta.  Tr. at pp. 269-74.

Dr. Liotta completed a psychiatric evaluation of Mancuso on December 17, 2004.  Upon

examination, Dr. Liotta noted that Mancuso's speech was clear and coherent, her mood was euthymic during the evaluation, and her affect was reasonably appropriate. *Id*. at pp. 271-72. Upon testing, Mancuso's abstracting ability was about average and she was able to do basic calculations. *Id*. at p. 272. She was unable to do serial sevens and serial threes and Dr. Liotta observed that her concentration appeared to be impaired, possibly secondary to her pain. He further determined that her overall "fund of information" appeared to be low and that she is likely of low average intellectual functioning overall. *Id*. He felt it likely that her pain and emotional status were taking a toll on some of her abilities, such as concentration and attention. *Id*. at pp. 272-73. In diagnosing Mancuso's impairments, Dr. Liotta opined Mancuso suffered from major depressive disorder of moderate severity and anxiety disorder, not otherwise specified. *Id*. at p. 273. He further noted occupational problems as well as problems dealing with the social environment due to anxiety. *Id*. at pp. 273-74. Dr. Liotta assessed Mancuso's Global Assessment of Functioning (GAF) at 50,[7] with some serious symptoms and serious impairment in social and occupational functioning.

The Court does not agree with Mancuso's generalization of Dr. Liotta's assessment. At best, it appears that Dr. Liotta found Mancuso had moderate limitations. This finding is further supported by the evaluations conducted by Drs. Weiss and Hartman, who each found that Plaintiff's mental impairments were moderate, not marked. *Id*. at pp. 208-09 & 291-92. After reviewing the medical evidence, Dr. Weiss opined on March 6, 2002, that Mancuso was mildly limited in her activities of daily living and in maintaining social functioning and was moderately limited in maintaining concentration, persistence, and pace; furthermore, no episodes of decompensation were noted. *Id*. at

---

[7] The Global Assessment of Functioning scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR"). A GAF of 41 to 50 means that an individual has serious symptoms or any serious impairment in social, occupational, or school functioning. *Id*.

p. 222.   On March 10, 2005, Dr. Hartman evaluated Plaintiff and opined that Mancuso's mental impairment imposed only mild limitations.  *Id.* at pp. 286-90.  Upon examination, Dr. Hartman opined that Mancuso's attention and concentration were mildly impaired while her memory skills were intact. *Id.* at pp. 288-89.  Insight and judgment were deemed fair and her cognitive functioning was deemed near the average range.  *Id.* at p. 289.  Overall, Dr. Hartman stated:

> With regard to claimant's vocational and functional capacities, it appears that Ms. Mancuso is able to follow and understand simple directions and instructions.  She has a fair ability to learn new tasks and a fair ability to make appropriate decisions.  She is likely to have mild difficulty performing a variety of tasks given her physical complaints.  She has mild attention and concentration problems at this time.  She has a mild degree of difficulty relating adequately with others and is likely to have mild to moderate problems dealing appropriately with the normal stressors of life.

*Id.* at pp. 289-90.

These findings are further supported by the opinions of Dr. Satloff whose expert opinion was obtained to resolve any inconsistency in the medical record.  *Id.* at p. 325-26.  After reviewing the Reports of Drs. Hartman and Liotta, Dr. Satloff opined that Mancuso had no limitations in her ability to understand, remember, and carry out short, simple instructions, and was only slightly limited in her ability to understand, remember, and carry out detailed instructions.  *Id.* at p.325.  Plaintiff was also deemed slightly limited in her ability to make judgments on simple work-related decisions.  *Id.*  Dr. Satloff also opined that Plaintiff had no limitations in her ability to interact appropriately with the public, supervisors, and co-workers, and was only slightly limited in her ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting.

Based on the above, Plaintiff failed to meet her burden in showing that she met the B criteria for both Listings.  With regard to the C criteria for each Listing, there is no medical evidence documenting a history of decompensation (Listing 12.04) nor that she had a complete inability to function independently outside her home (Listing 12.06).  Accordingly, we find that the ALJ did not

commit error when he determined Plaintiff's severe mental and physical impairments did not meet nor medically equal a Listed impairment and his decision is supported by substantial evidence.

## 2. Residual Functional Capacity (RFC)

After reviewing the medical evidence, the ALJ determined Mancuso had the RFC to perform a significant range of light work.[8]  Specifically, the ALJ determined Mancuso could

> lift or carry up to 10 pounds frequently and 20 pounds occasionally with the ability to occasionally climb, stoop, bend, crouch and crawl, and occasional problems understanding, remembering and carrying out detailed instructions, dealing with stress, maintaining attention/concentration, and interacting with others.

Tr. at p. 18.

Mancuso maintains that this RFC is incorrect as she is not even capable of performing sedentary work. She further exclaims that the ALJ improperly discounted her credibility, allegations of pain, and the opinions of her treating physicians, though she fails to identify a treating physician who was inappropriately ignored.

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments.  *See* 20 C.F.R. § 416.945(a).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id*. at § 416.945(a).

_____

[8] The Social Security Regulations define light work as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 416.967(b).

The Court finds the ALJ's physical RFC assessment is supported by substantial evidence. In determining Mancuso's RFC, the ALJ gave significant weight to the opinion of Amelita Balagtas, M.D., who completed an orthopedic examination of Plaintiff of February 5, 2002, and some significant weight was given to Dr. Goodman's expert opinion. At Dr. Balagtas's examination, Mancuso exhibited full range of motion of her cervical spine with no pain or spasm; she further exhibited full range of motion in her upper and lower extremities. Tr. at pp. 197 & 296. In reviewing the medical record, we note that throughout Mancuso's treatment history, she was consistently observed to have a normal gait, there was no evidence of muscle atrophy, she displayed full muscle strength, normal reflexes, and her straight leg raising was negative. *Id*. at pp. 180, 191, 197, 249, 296-97, & 341. While Plaintiff argues that her obesity and fibromyalgia were disabling conditions, we agree with the Commissioner that there is no objective evidence in the record to corroborate these claims. Notably, there is only one reference in the entire medical record to a potential diagnosis of "probabl[e] fibromyalgia," set forth by Edward S. Leib, M.D., on September 8, 2005. *Id*. at p. 339. However, Dr. Leib noted that Plaintiff had not followed up with a neurologist for further treatment or a definitive diagnosis and had made no plans to follow up with him, thus, at the time the ALJ rendered his decision, there was virtually no development of a possible diagnosis of fibromyalgia.[9] *Id*. With respect to Plaintiff's obesity, there is no evidence in the record which would suggest that Plaintiff's obesity prevented her from performing the physical demands of light work. Notably, not one doctor indicated Plaintiff's obesity resulted in any limitation, though she was consistently counseled to lose weight through exercise. As stated above,

---

[9] In a letter to the Court, dated February 23, 2009, Plaintiff's counsel informs that subsequent to filing this appeal in federal Court, Ms. Mancuso filed another application for SSI, which was granted on October 28, 2008. Dkt. No. 15. It appears that fibromyalgia supported, in part, the ALJ's decision to grant disability. *Id*. Counsel provided the Court with a copy of the ALJ's decision granting benefits, urging the Court to consider this "new evidence" because it is "relevant and material" to the period in question now before this Court. For reasons explained later in this opinion, we disagree.

Mancuso was consistently observed as having normal gait and no problems with ambulating, thus, it does not appear that Mancuso's obesity affected her "ability to perform routine movement and necessary physical activity within the work environment." *See* Social Security Ruling 02-1p, 2000 WL 628049, *Policy Interpretation Ruling, Titles II and XVI: Evaluation of Obesity* (S.S.A. 2002).

Other medical evidence further supports the ALJ's physical RFC assessment. The objective medical evidence, such as x-rays and MRIs, consistently displayed minimal findings. *See* Tr. at pp. 199, 236-38, 251, 257-60, & 263-64. Dr. Leib noted that the MRI from March 2003 portrayed minimal anatomic findings with no stenosis and no disc herniation. *Id*. at p. 341. In April 2005, Dr. Goodman stated there is no evidence of any organic disabling condition to Plaintiff's neck and back and the MRI reports did not produce significant findings. *Id*. at p. 329. These findings support the ALJ's light work RFC.

In addition to limiting Plaintiff to light exertional demands, the ALJ found that Plaintiff's mental impairment imposed non-exertional limitations on her ability to function. Specifically, as noted above, the ALJ found that Mancuso had problems understanding, remembering and carrying out detailed instructions, dealing with stress, maintaining attention and concentration, and interacting with others. In rendering this determination, the ALJ gave significant weight to the opinion of Dr. Payne, less weight to the opinion of Dr. Weiss, who did not examine Plaintiff, and some significant weight to the expert opinion of Dr. Satloff. After examining Plaintiff, Dr. Payne opined,

> Ms. Mancuso could follow and understand simple directions and instructions. She could perform simple rote tasks under supervision. She could consistently perform simple tasks. She does have difficulties with attention and concentration and making appropriate decisions. She would have difficulties performing complex tasks and relating with others. She would have difficulties dealing with normal stresses of the competitive work place. Her psychiatric difficulties are moderately limiting.

*Id*. at p. 194.

-19-

Dr. Payne's opinion supports the ALJ's RFC assessment.  It is worth noting that both Drs. Satloff and Weiss found Mancuso's mental impairment had even less limitations on her functional capacity, thus, it appears the ALJ provided the most weight to the more limiting opinion.  Plaintiff fails to adduce evidence in the record to support more functional limitations than that assessed by the ALJ.

Next, Mancuso alleges that the ALJ erred in not fully crediting her subjective allegations of disabling pain.  Mancuso seems to assert that her subjective pain is an additional non-exertional impairment further limiting her ability to perform light work.  We must first disabuse Plaintiff of the notion that pain is a non-exertional impairment.  Pain is a symptom.  Social Security Ruling 96-4p, 1996 WL 374187, at *2, *Policy Interpretation Ruling Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations* (S.S.A. 1996); *see also* Social Security Ruling 96-8p, 1996 WL 374184, at *6, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996) ("[S]ymptoms, including pain, are not intrinsically exertional or nonexertional.").  Thus, in and of itself, pain is not an impairment, but it "can cause limitations or restrictions that are classified as exertional, nonexertional or a combination of both."  SSR 96-4p at *2; SSR 96-8p at *6.

Under 20 C.F.R. § 416.929(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings.  *Id*. at § 416.929(c)(4).  Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work.  *Id*. at § 416.929(c).  "It is well settled that 'a claimant's subjective

evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)).  However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987).  Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id*. at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)).  In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

(i)     [The claimant's] daily activities;
(ii)    The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
(v)     Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
(vi)    Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

First, the ALJ acknowledged that objective findings included in the medical record support the existence of some pain. Tr. at p. 18.  However, after observing Mancuso testify at the hearing, the ALJ assessed she was exaggerating the severity of her pain. *Id*.  The ALJ focused on the fact that the

abnormal medical evidence, as acknowledged by Dr. Goodman, while capable of producing some pain were nonetheless minor abnormalities. *Id*. Furthermore, the ALJ found it significant that Mancuso only used over-the-counter medication and had not been prescribed a cane to stabilize her walking, though she used one anyhow. *Id*. The ALJ also took into account Plaintiff's daily activities, such as reading, cleaning, cooking, and caring for her children. Overall, the ALJ credited Mancuso with experiencing some pain, but not to the disabling effect alleged. Though other doctors found no physical limitations, the ALJ limited Mancuso to light work based upon her subjective allegations of pain. Thus, the Plaintiff's complaint that the ALJ disregarded her allegations of pain is incorrect. As the ALJ's decision is supported by substantial evidence, this Court upholds the credibility determination.

Since Plaintiff fails to direct this Court to other evidence in the medical record that supports a more restrictive RFC than that noted by the ALJ, we find that the ALJ's RFC determination is supported by substantial evidence and the correct legal standards were applied.

### 3. Step Five – Vocational Expert (VE) Testimony

Plaintiff contends that the ALJ erred when he failed to provide a hypothetical question to the VE which accurately depicted Mancuso's non-exertional limitations.

If at Step Four the ALJ determines the claimant cannot perform her past work, then at Step Five, the ALJ considers whether the claimant can perform any other work available in the national economy based on the claimant's RFC, age, education, and prior vocational experience. *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d at 467; *Brown v. Comm'r of Social Security*, 2005 WL 1745655, at *3 (N.D.N.Y. June 30, 2005). In a case where VE testimony is utilized, "[t]he ALJ is entitled to rely on vocational expert evidence in deciding whether a plaintiff retains the capacity to perform other work which exists in significant numbers in the national economy." *Marzean v.*

*Comm'r of Soc. Sec.*, 2008 WL 1945229, at *5 (N.D.N.Y. May 1, 2008) (citing 20 C.F.R. §

404.1566(e)). Moreover, "[i]t is well-established that elicitation of testimony from a vocational expert

is a proper means of fulfilling the agency's burden at step five of the disability test to establish the

existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable

of performing." *Id.* (citing *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986)) (further citations

omitted).

When the testimony of a VE is utilized, as was here, the ALJ must present a hypothetical that

incorporates all of Plaintiff's impairments. *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y.

2002) (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir. 1992) for the proposition that "the

hypothetical question posed to a vocational expert must fully set forth a claimant's impairments"). If

the ALJ fails to pose hypothetical questions that do "not include all of a claimant's impairments,

limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute

substantial evidence to support a conclusion of no disability." *Id.* (citing *Morse v. Shalala*, 16 F.3d.

865, 874 (8th Cir. 1994)).

After reviewing the classifications of Plaintiff's prior work experience, the ALJ presented his

first hypothetical, asking the VE to assume a younger individual, age 28-36, capable of performing light

exertional work, with occasional climbing, stooping, bending, crouching, or crawling, who, because

of psycological or emotional problems, would have occasional problems with understanding,

remembering, and carrying out detailed instructions, dealing with stress, maintaining attention and

concentration, and interacting with others so that they would be limited to simple, low-stress type work

without constant interaction with others. Tr. at pp. 425-26. The VE explained that such an individual

could not return to any of Mancuso's past work. *Id*. at p. 426. However, the VE testified that such

individual could perform other work available in the regional and national economy, such as mail clerk (light work with 166,000 positions nationally, 12,000 in New York State, and 130 in the North Country Region), office messenger (light work with 121,670 positions nationally, 14,500 in New York State, and 510 in the North Country Region), and order clerk (sedentary work with 338,430 positions nationally, 25,000 in New York State, and 160 in the North Country Region). *Id.* The VE confirmed that her findings were consistent with the *Dictionary of Occupational Titles* (DOT). *Id.* at p. 430. The ALJ then asked the VE to assume further psychological limitations so that the hypothetical individual would have frequent problems with understanding, remembering, and carrying out detailed instructions, dealing with stresses, maintaining attention and concentration, and interacting with others. *Id.* at p. 427. The VE replied that there are no jobs which this hypothetical individual could perform. *Id.*

In this case, the ALJ's hypotheticals were proper since they incorporated a RFC determination which this Court has upheld as properly supported by substantial evidence in the record. The ALJ did not err in relying upon the testimony of the VE in all respects.

### 4.  Dr. Goodman's Bias

Plaintiff complains that the ALJ unjustifiably relied upon the expert opinion of Dr. Goodman, whom Plaintiff described as biased.   Plaintiff summarizes her objections to Dr. Goodman's opinion as follows:

> The clear implication is that Dr. Goodman is paid by the SSA to testify that claimants are not disabled or seriously injured.  He is very savvy in the ways of a professional expert.  He hid the fact that he is a licensed attorney from Appellant and the ALJ.  He was extremely evasive and misleading in his responses to the Interrogatories.  As an attorney and a professional witness, he understood exactly the purpose of the Interrogatories – to expose his bias.  That is why he would not give straight answers.

Pl.'s Br. at p. 35.

Plaintiff's entire argument is baseless and unsubstantiated.  First, the Court finds little merit and sees no relevance in the accusation that Dr. Goodman intentionally hid the fact that he is an attorney.  His status as an attorney has little bearing on his credentials to testify in Social Security matters.  Plaintiff's intimation that this was somehow deliberately hidden by a "Long Island" doctor is insulting and disingenuous.  Furthermore, the very fact by itself that Dr. Goodman was hired and paid by the Social Security Administration does not necessarily mean he offered an opinion skewed towards the Administration.  And, any alleged bias in this regard would be exposed through the Plaintiff's interrogatories.  Indeed, the ALJ specifically tempered the opinions proffered by Dr. Goodman in view of the Plaintiff's cross-examination.  Instead of offering medical evidence to counter Dr. Goodman's medical assessment, Plaintiff presents nothing more than harsh words amounting to the proverbial smoke without a fire.  We do not find any merit in Plaintiff's argument of bias.

### 5.  Subsequent ALJ Decision

Lastly, after this matter was fully briefed, Plaintiff submitted a subsequent ALJ decision based upon a subsequent disability application filed by Plaintiff.  Dkt. No. 15.  In that decision, the ALJ found

Mancuso disabled since May 31, 2006.  Dkt. No. 15-2.  Plaintiff asks the Court to consider this subsequent decision in reviewing the current appeal as it is both "relevant and material to the period in question" currently before this Court.  Dkt. No. 15.  The Court does not fully comprehend the basis for such statement.  In the subsequent decision, the ALJ specifically stated he found no basis for reopening Mancuso's prior SSI application.  The ALJ also limited his review to medical evidence starting in May 2006, well beyond the period at issue in this case.  Accordingly, we decline to consider the subsequent grant of disability benefits as relevant to the question currently before this Court, namely, whether Mancuso was disabled from December 11, 2001, her protective SSI application date, through December 22, 2005, the date of the ALJ's decision.

### III.  CONCLUSION

In light of the foregoing discussion, it is clear that in finding Mancuso was not disabled, the ALJ applied the correct legal standards and his factual findings were supported by substantial evidence.

**WHEREFORE**, it is hereby

**ORDERED**, that the Commissioner's decision denying SSI benefits is **AFFIRMED** and Judgment shall be entered in the Commissioner's favor; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order to the parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Date:   March 31, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

-26-